**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE | ) | |
| COUNTY OF CLEVELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-0569-F |
| | ) | |
| MERSCORP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, the Board of County Commissioners of Cleveland County, Oklahoma, moves to remand this action under 28 U.S.C. § 1447. Doc. no. 32, corrected brief in support at doc. no. 35-2. Defendant SpiritBank objects to remand. Doc. no. 37. Also opposing remand in a jointly-filed memorandum are defendants MERSCORP, Inc. n/k/a MERSCORP Holdings, Inc.; Mortgage Electronic Registration Systems, Inc., (MERS); Bank of America, NA; JPMorgan Chase Bank, NA; Suntrust Mortgage, Inc.; Wells Fargo Bank, NA; and U.S. Bank, N.A. Doc. no. 38.

### Background

This is a putative class action brought by Cleveland County on behalf of itself and other Oklahoma counties. The action arises out of defendants' alleged failure to record every mortgage assignment in the proper county recording office, and defendants' alleged failure to pay attendant recording fees, all in violation of Oklahoma law. Petition, doc. no. 1, ex. 1, ¶ 1.[1]

---

[1]All paragraph numbers cited in this order refer to the petition.

## Citizenship of Certain Parties

Plaintiff is a citizen of Oklahoma. *See*, <u>Moor v. County of Alameda</u>, 411 U.S. 693, 717-21 (1973)(a political subdivision of a state, unless it is simply the arm of alter ego of the state, is a citizen for diversity purposes; California county held to be a citizen of California).

The petition names twelve defendants.[2]

One of these defendants is SpiritBank, a citizen of Oklahoma for purposes of diversity.[3]

"Bank of Oklahoma, N.A." is also named as a defendant. However, in defendants' notice of jurisdictional facts, doc. no. 40, defendants state that this defendant is incorrectly named in the petition. Defendants state that "Bank of Oklahoma, N.A." is not a legal entity; and that "Bank of Oklahoma" is a trade name under which BOKF, NA, does business in the State of Oklahoma. Doc. no. 40. Defendants submit public records to show that BOKF, NA, is a national banking association with its main office located in Tulsa, Oklahoma.[4] BOKF, NA, is a citizen of Oklahoma by virtue of being a national banking association whose articles of association designate the location of its main office as Tulsa, Oklahoma.

## Arguments for Remand

Plaintiff moves to remand on a number of grounds.

---

[2]The petition also names an unknown number of Doe Corporation defendants and states plaintiff's belief that the identities of these defendants will become known through discovery.

[3]The petition alleges that SpiritBank is an Oklahoma corporation which maintains its principal place of business in Tulsa, Oklahoma. ¶ 15.

[4]Defendants submit a trade name report filed with the Oklahoma Secretary of State. Doc. no. 40-1. They also submit the Amended and Restated Articles of Association of BOKF, National Association, filed with the Comptroller of the Currency. Doc. no. 40-2.

First, plaintiff argues (in proposition IV.A. of its moving brief, doc. no. 35-2, p.7) that the notice of removal failed to establish federal jurisdiction for three reasons. In this part of its brief, plaintiff argues:  1) that the notice of removal failed to sufficiently allege that the operative pleading, plaintiff's petition, had fatal deficiencies in the allegations directed at the non-diverse defendants; 2) that in the notice of removal defendants failed to carry their burden to show that the non-diverse defendants were fraudulently joined; and 3) that contrary to arguments made in the notice of removal, dismissal of the non-diverse defendants under Rule 21, Fed. R. Civ. P., is not appropriate.

Plaintiff next argues that the notice of removal is procedurally defective because all properly joined and served defendants failed to consent to removal. (Proposition IV.B.)

Plaintiff's moving brief then sets out more detailed arguments regarding its contention that the removing defendants failed to meet their burden to prove that joinder of the non-diverse defendants was fraudulent.  (Proposition IV.C.)

Lastly, plaintiff argues that failure to remand this action would harm the plaintiff, would be unfairly burdensome, and would be procedurally improper. (Proposition IV.D.)  This last argument is made in response to defendants' position that the two non-diverse parties are dispensable and should be dismissed.  In this section of its moving brief, plaintiff argues that it is the master of its own complaint and that it properly chose to pursue causes of action in state court, in one action filed against both diverse and non-diverse defendants.  Plaintiff also argues that it would be harmed if the court were to dismiss the non-diverse defendants.

In part one of the "Discussion" portion of this order, below, the court addresses plaintiff's argument that removal was procedurally defective because not all defendants gave their consent to the removal.  Plaintiff's other grounds for remand

relate to the presence of non-diverse defendants in this action; these other arguments are addressed together in part two.

Discussion

1.  <u>Procedural Defect Based on Lack of Consent to Removal</u>

In response to plaintiff's argument regarding lack of consent to removal, defendants assert that the two defendants who did not join in the removal, CitiMortgage and Principal Residential Mortgage, Inc. (PRMI), were not properly served and therefore were not required to consent.  Defendants argue that the person through whom CitiMortgage was purportedly served is not CitiMortgage's registered agent for service in Oklahoma, as reflected by documents submitted to the court. Defendants argue that purported service on PRMI is a nullity because PRMI did not exist when the case was filed, as PRMI merged into CitiMortgage in 2005 as acknowledged in the petition at ¶ 21.  Defendants also argue that the address at which plaintiff purportedly served PRMI was not the correct address for service even when PRMI did exist.  As an alternative argument, defendants state that consent to removal by both CitiMortgage and PRMI was provided orally, prior to filing the notice of removal.  Affidavits are attached to that effect.  Plaintiff did not file a reply brief to dispute these specific arguments or evidence.

It is preferable to allow procedural defects in the removal procedure to be cured. <u>Esposito v. Home Depot U.S.A., Inc.</u>, 590 F.3d 72, 77 (1st Cir. 2009) (quoting Wright, Miller & Cooper, <u>Federal Practice and Procedure</u> § 3739; defect in unanimity cured when Home Depot opposed remand motion, thereby communicating its desire to be in federal court).

In the circumstances of this action, the court finds that the purported procedural defects are not grounds for remand.

## 2.  The Non-Diverse Defendants' Impact on Jurisdiction

In response to plaintiffs' arguments regarding lack of diversity, defendants argue that the citizenship of the non-diverse defendants, SpiritBank, and BOKF, NA (incorrectly named in the petition as Bank of Oklahoma, N.A.), should be disregarded because these defendants were fraudulently joined.[5] Defendants also argue that whether or not joinder was fraudulent, the court should exercise its discretion to dismiss the non-diverse defendants under Rule 21, Fed. R. Civ. P.

The law places a heavy burden on a party asserting fraudulent joinder. Montano v. Allstate Indemnity, 211 F.3d 1278, 2000 WL 525592 at *1-2 (10th Cir.2000), unpublished decision cited here pursuant to the requirements of Tenth Circuit Rule 36.3. Quoting from Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir.2000), Montano states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

Montano at *1-2, brackets in Montano.

This standard is more exacting than that for dismissing a claim under Rule 12(b)(6), Fed.R.Civ.P. Montano at *2. A Rule 12(b)(6) motion involves the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced. Id. A claim which can be dismissed only after an

---

[5]The court notes that the term "fraudulent" joinder is a bit of a misnomer.  Although the standard is stringent, actual fraud need not be found.  See, Mayes v. Rapoport, 198 F.3d 457, 461 n.8 (4th Cir. 1999).  The issue, rather, is whether the claim against the nondiverse party is hopelessly lacking in merits – a condition which can, and often does, exist even in the absence of a fraudulent pleading.

intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction. <u>Montano</u> at *2, paraphrasing <u>Batoff v. State Farm Ins. Co</u>., 977 F.2d 848, 851-53 (3d Cir.1992). Moreover, remand is required if any one of the claims against the non-diverse defendant is possibly viable. <u>Montano</u> at *2, citing <u>Green v. Amerada Hess Corp.</u>, 707 F.2d 201, 207 (5th Cir.1983).

Defendants argue that the petition merely references the defendants as a group, and that there are no allegations that either of the non-diverse defendants participated in any specific conduct.  Defendants further argue that there are no allegations that either of the non-diverse defendants, by name, are (or were) members of Mortgage Electronic Registration System, Inc. (MERS) or participated in the MERS operations detailed in the petition.  Before considering whether the *lack* of allegations specific to the non-diverse defendants establishes fraudulent joinder, the court reviews some of what the petition *does* allege.  These allegations are made against all defendants as a group.

The petition alleges that the defendants realized it would be faster and cheaper to securitize mortgages, thus rendering higher profits, if they did not record each and every intermediate mortgage assignment in county recording offices.  ¶ 4.  The petition alleges that to accomplish this goal, defendants began to record land instruments in the name of a private corporate entity which they contended could act as their placeholder in the county public records.  ¶ 4.a.  In <u>other</u> instances, the petition alleges that defendants simply failed to record mortgage assignments at all.  ¶ 4.b., emphasis added.  The petition alleges that by circumventing county recording requirements, defendants saved time and avoided paying counties recording fees. ¶5. The petition alleges that this conduct violated Oklahoma's statutory recording requirements.  Plaintiff asserts, in essence, that the defendants concocted, or actively

participated in, a scheme to reap the benefits of lien priority – created by state law and perfected with the use of plaintiff's recording facility – while avoiding the burden of paying to plaintiff the fees that are normally exacted to establish that priority.

The petition alleges that defendants systematically broke chains of land title throughout Oklahoma's county land records by creating gaps due to missing mortgage assignments which defendants failed to record, or by recording false or misleading mortgage assignments.  ¶ 7.  The petition alleges that this conduct eviscerated the accuracy of the counties' land records, rendering the records unreliable and unverifiable.  ¶ 7.  The petition alleges that defendants' purposeful failure to record each and every mortgage assignment damaged Oklahoma's counties' land records in a manner that may never be entirely remedied.  ¶ 8.

Later in the petition, details of various MERS operations and schemes are detailed.  ¶¶ 29 - 44.  The petition does not specify which defendants were MERS members, or which defendants participated in these alleged operations and schemes.

Class allegations are also set out.  ¶¶ 45 - 52.

The petition then sets out two causes of action.  The first seeks a declaratory judgment and a permanent injunction against all defendants.  This claim alleges that defendants' failure to record every mortgage and mortgage assignment on real property in Oklahoma constitutes a justiciable controversy which should be resolved through declaratory relief.  ¶ 55.  Requested relief includes a judgment declaring that pursuant to cited Oklahoma statutes, defendants are required to record each and every prior and future mortgage and mortgage assignment, and declaring that defendants are required to pay attendant statutory recording fees to the county in which the subject real property is located.  ¶ 56.  The requested injunction would compel defendants to record every prior and future mortgage and mortgage assignment in the proper county

recording office, and would order defendants to cease their non-recording practices. ¶ 57.

The second cause of action is for unjust enrichment.  It is alleged against all defendants.  This claim alleges that the defendants were unjustly enriched by their wrongdoing at the expense of the plaintiff and the class.   ¶ 61.  The petition seeks restitution from each of the defendants to disgorge all profits, benefits, and other compensation which was obtained by the defendants as a result of their wrongful conduct.  ¶ 62.

Although the absence of allegations tailored to each non-diverse defendant might, in some situations, suggest that the defendant is fraudulently joined, that is not the case here given the nature of this acton and the general narrative that is alleged. For example, as seen from the above recitals regarding the nature of the allegations, the petition implicitly invokes the nation's massive mortgage securitization bubble. It alleges that "beginning in the 1990s, securitization of mortgages became more common," ¶ 39, and it alleges that all of the defendants, by their conduct, were able to reap ever-increasing profits through quick and cheap securitizations.  ¶ 4. Furthermore, although the petition alleges MERS operations and schemes in detail, plaintiff's theories of recovery are not limited to participation in the MERS operations. For example, while ¶ 4.a. alleges recording by defendants which were made in the name of a private corporate entity, ¶ 4.b., by contrast, alleges that "in other instances" defendants failed to record mortgage assignments.  The court also notes that the petition treats the non-diverse defendants in the same manner that it treats the diverse defendants.  While this lack of specificity could arguably be problematic for some purposes, this drafting format is at least understandable here given the broad nature of the claims alleged.  In short, the petition's lack of specificity

regarding individualized conduct by the non-diverse defendants does not show fraudulent joinder.

Defendant's other arguments as to why the petition fails to allege a colorable claim against the non-diverse defendants are not much different from Rule 12(b)(6)-type arguments.  While the legal merit of an alleged claim is a relevant inquiry when fraudulent joinder issues are raised, defendants' arguments would require the court to determine the ultimate merits of each of plaintiff's claims alleged against each of the non-diverse defendants, including interpretation of any statutory ambiguities.  As previously stated, a claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction. <u>Montano</u>, *supra*, at *2, paraphrasing <u>Batoff</u>.

Defendants have not demonstrated that there is no possibility the plaintiff would be able to establish a cause of action against either one of the non-diverse defendants. Fraudulent joinder has not been shown.

The court next considers whether the non-diverse defendants are dispensable and should be dismissed under Rule 21, Fed. R. Civ. P.  If the non-diverse defendants were dismissed from this action as defendants propose, plaintiff might be required to initiate a second lawsuit in state court to pursue non-diverse defendants.  Plaintiff argues that a second suit would cause it to expend more resources.  Plaintiff states that it brought a putative class action in order to avoid the type of duplicative actions that it would be forced to file were this court to disregard its jurisdictional limitations and dismiss the non-diverse defendants.  Plaintiff makes other arguments regarding resulting the burdens if the court were to dismiss the non-diverse defendants, including the fact that two actions, one in state court and one in federal court, would also be an inefficient use of judicial resources.

Dismissal of the non-diverse defendants would place unnecessary burdens on the plaintiff and on the judicial system.  Defendants are effectively asking this court to dismember plaintiff's case for the sake of saving diversity jurisdiction.  The court is reluctant to do that.  This case is at an early stage.  Defendants have not satisfied the court that the claims against the non-diverse defendants are wholly lacking in merit.  Those facts counsel a measure of deference to plaintiff's choices as to what lenders to sue, especially where, as here, the case has not progressed to the point that significant injustice, waste of resources already expended, or other forms of prejudice would result from returning the case to state court.[6]  The non-diverse defendants may well be dispensable, but assuming that to be so, the court declines to dismiss them under Rule 21, Fed. R. Civ. P.

Conclusion

The presence of a non-diverse defendant defeats diversity jurisdiction, the only type of federal subject matter jurisdiction that is available in this action.  The motion to remand is **GRANTED**.  This action is hereby **REMANDED** to the District Court of Cleveland County, State of Oklahoma.

Dated this 9th day of August, 2012.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

12-0569p007.wpd

---

[6]  The court will also note, although this is assuredly not dispositive, that, to the extent that plaintiff's assertions as to the obligations imposed by Oklahoma's recording statutes raise issues that have not been definitively addressed by the Oklahoma Supreme Court, there is more than a passing possibility that this federal court, or the Court of Appeals, would call on the Oklahoma Supreme Court for definitive guidance.  This court is a trial court, just like the District Court of Cleveland County, from whence this case was removed.  Important (probably important enough to be called *publici juris*), unresolved and potentially dispositive issues of Oklahoma law can less circuitously be addressed if this case starts in an Oklahoma trial court and stays in the Oklahoma judicial system.